STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. LAWRENCE FALCONE, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 10, 1986—Decided July 10, 1986.

---

[5]If convicted of murder as an adult, the juvenile faces a mandatory sentence of 30 years without parole. *See N.J.S.A.* 2C:11–3b.

Before Judges MICHELS, GAULKIN and STERN.

*Stephen P. Tasy,* Deputy Attorney General, argued the cause for appellant State of New Jersey, Department of Corrections (*W. Cary Edwards,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Stephen P. Tasy,* on the brief).

*Philip M. Saginario* argued the cause for respondent (*Philip M. Saginario,* attorney; *Richard L. Marcickiewicz,* on the brief).

The opinion of the Court was delivered by

MICHELS, P.J.A.D.

Plaintiff State of New Jersey, Department of Corrections appeals from part of an order of the Law Division which directed that defendant Lawrence Falcone "be transported from the Morris County jail to the State Diagnostic & Treatment Center at Avenel" within ten days. The pivotal issue raised by this appeal is whether the sentencing court had the power to direct the immediate admission of defendant to the Adult Diagnostic and Treatment Center (ADTC). We are thoroughly convinced that it did not and, therefore, reverse the order under review.

A brief overview of the procedural history and factual background giving rise to this appeal is necessary in order to understand the result we reach here today. Following plea negotiations, defendant pleaded guilty to four counts of criminal sexual assault, in violation of *N.J.S.A.* 2C:14–2b. The State, for its part of the plea agreement, recommended the dismissal of the remaining eleven counts of the indictment. In accordance with this plea agreement, on December 13, 1985, defendant was sentenced to an indeterminate term, not to exceed ten

years, to be served in the ADTC, pursuant to *N.J.S.A.* 2C:47–3. When he imposed sentence, the trial judge specifically noted:

I am satisfied that Lawrence needs considerable help to help himself. And I'm also satisfied that the appropriate state institution for the sentence is the Adult Diagnostic and Treatment Center.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

[I]t's the order of this Court that he be *immediately* sent to the Diagnostic Center. (Emphasis supplied)].

On January 30, 1986, defendant filed a motion in which he sought to be immediately transferred from the Morris County Jail to the ADTC or, alternatively, to be released on bail pending the availability of space at the ADTC. The State opposed this motion on the grounds that: (1) the ADTC was filled to capacity; and (2) it would be highly inequitable to admit defendant, out of sequence, from his position on the institution's "waiting list". On the return date of this motion, February 14, 1986, the trial court initially noted that it had erred in sentencing defendant to an indeterminate, rather than a determinate term at the ADTC, and corrected the sentence to provide:

Defendant is committed for specialized treatment to the Adult Diagnostic and Treatment Center at Avenel, New Jersey, the institution designated by the Commissioner, Department of Corrections, for a determinate term of four (4) years, the presumptive term for third-degree crimes, on Count Three; and a determinate term of four (4) years, the presumptive term for third-degree crimes, on Count Four. The sentences on Counts Three and Four shall run concurrently, in accordance with the Plea Agreement.

The defendant is further committed for specialized treatment to the Adult Diagnostic and Treatment Center at Avenel, New Jersey, the institution designated by the Commissioner, Department of Corrections, for a determinate term of four (4) years, the presumptive term for third-degree crimes, on Count Six; and a determinate term of four (4) years, the presumptive term for third-degree crimes, on Count Nine. The sentences on Counts Six and Nine are to run concurrently, in accordance with the Plea Agreement. The sentences on Counts Six and Nine are *consecutive* to the sentences imposed on Counts Three and Four. (Emphasis in original).

In imposing this corrected sentence, the trial court noted it felt "very strongly that this sentence should be served at the Adult Diagnostic and Treatment Center, where defendant [could] hopefully receive ... 'specialized treatment'." There-

after, the trial court again corrected the sentence to reflect "a presumptive 4 year term on each of Counts 3, 4, 6 and 9 with the sentence on Counts 3 and 4 to be concurrent with the sentence of Counts 6 and 9 but the sentence of Counts 6 and 9 is consecutive to that imposed on Counts 3 and 4." The trial court then denied defendant's motion to be released on probation or on bail. However, it determined that some relief should be granted and, therefore, further ordered that "within ten (10) days, defendant shall be transported from the Morris County jail to the State Diagnostic & Treatment Center at Avenel."

The State appealed from that portion of the order which required defendant's admission to the ADTC within 10 days and sought a stay of the order pending appeal. Although this relief was denied by the trial court, we stayed the order of admission and accelerated this appeal.

Before turning to the State's challenge to the authority of the sentencing court to order the immediate transfer of defendant to the ADTC, we think it is important to point out that, at all times since imposition of his original sentence, defendant has been a State Prison inmate, confined in the Morris County Jail in Morristown, New Jersey, while awaiting an opening at the ADTC. This situation has resulted because, from the time of the imposition of his sentence in December 1985, the ADTC has been filled to capacity. For many years, this institution had a rated or intended capacity of 180 inmates, which was based upon the number of beds available in single-man cells. However, since 1978, the total rated capacity of the ADTC has been increased to 228 inmates, as a result of the addition of 48 new beds at the facility. Moreover, conversion of storage, classroom and dayroom areas into dormitory space has further raised the operational capacity of the ADTC to 362 inmates.

Due to the fact that the ADTC is filled to capacity (and has apparently been for some time), additional inmates are not being accepted regularly at the facility. As a result of this situation, a Senior Correction Officer at the ADTC maintains a

"waiting list" of sex offenders who have been sentenced to the facility. This list is submitted, on a weekly basis, to both the Superintendent of the ADTC and the Deputy Director of the Division of Adult Institutions at the New Jersey Department of Corrections. As of January 10, 1986, the "waiting list" reflected that a total of 75 convicted sex offenders were incarcerated in county jails, awaiting admission to the ADTC, pending the availability of space. Some of these individuals have been awaiting admission to the facility since May and June 1985. Following his initial sentencing in December 1985, defendant was number 66 on the "waiting list". However, in February 1986, at the time of the motion for change of sentence was brought, defendant had moved up to number 59. At oral argument, counsel informed us that defendant had advanced to number 25 on the waiting list.

Inmates gain admission to the ADTC as space becomes available in accordance with their position on the "waiting list". Generally, vacancies occur when inmates are released from the ADTC on parole. Exceptions from this admission scheme may be made, however, in the discretion of State officials, when: (1) an inmate suffers from a serious medical problem which the county is unable to address; or (2) an inmate poses a management problem to the county; or (3) an inmate is in physical danger, as a result of other inmates at a county facility. There is no dispute that these exceptions are inapplicable to defendant.

As a result of the increasing need for additional space at the ADTC, a new brick and mortar facility has been opened on the grounds at Avenel. This new building houses an additional 48 inmates and has increased the rated capacity of the ADTC from 180 to 228 inmates. In addition, discussions have recently been undertaken to initiate further construction at the ADTC, in order to expand the inmate capacity. This expansion would seek to solve both present and future needs of the institution. Pursuant to this endeavor, the Department of Corrections has commissioned a feasibility study to be undertaken by the Divi-

sion of Building Construction. This project, however, is still in its early stages of development and, accordingly, the State cannot presently estimate its date of completion or when additional beds will become available.

Additionally, since March 1986, the Department of Corrections has begun considering several additional possible resolutions to the severe delays in transferring sentenced inmates from county jails to ADTC. One suggested resolution involves the initiation of treatment for inmates sentenced to ADTC, who still remain in county jails. This suggestion, however, has not been deemed to be entirely acceptable due to logistical problems and concerns as to whether treatment could be effective when administered in the environment of a county jail.

In view of these concerns, the Department of Corrections has begun considering a bolder proposal which would identify several county jail sites as regional centers for the treatment of sex offenders. Pursuant to this plan, a total of 100 beds for inmates would be added and a team of therapists would be present at each regional site. In addition, the Department of Corrections is also exploring a proposed contract to house 166 sentenced sex offenders in a privately-operated facility.

We turn now to the challenge to the order requiring defendant's admission to the ADTC within 10 days on the ground that it exceeds the scope of the court's sentencing power. In support of this challenge, the State argues that the order: (1) impinges upon the authority of the Commissioner of the New Jersey Department of Corrections (Commissioner) to determine the place of confinement for State inmates; and (2) contributes to the serious problem of overcrowding at the ADTC.

Pursuant to Chapter 47 of the New Jersey Code of Criminal Justice (Code), a person convicted of aggravated sexual assault, sexual assault or aggravated sexual contact, or any attempt to commit such a crime, must be referred by the sentencing court to the ADTC for a complete physical and psychological examination. *N.J.S.A.* 2C:47–1. Following this examination, a writ-

ten report of the results must be forwarded to the court, *N.J.S.A.* 2C:47–2, and:

> [i]f the examination reveals that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior, *the court may,* upon the recommendation of the Adult Diagnostic and Treatment Center, *sentence the offender to the Center for a program of specialized treatment for his mental condition....* [*N.J.S.A.* 2C:47–3a (Emphasis supplied).

The court, however, must also impose a term in accordance with Chapters 43 and 44 of the Code. *N.J.S.A.* 2C:47–3b.

■ With respect to the treatment and transfer of persons sentenced pursuant to *N.J.S.A.* 2C:47–3, the Code further provides:

> a. *The Commissioner* of the Department of Corrections, upon commitment of such person, *shall provide for his treatment in the Adult Diagnostic and Treatment Center.*
>
> b. *The [C]ommissioner may, in his discretion, order the transfer of a person sentenced under this chapter out of the Adult Diagnostic and Treatment Center.* In the event of such a transfer the conditions of confinement and release of such person transferred shall no longer be governed by this chapter. [*N.J.S.A.* 2C:47–4a, b (Emphasis supplied)].

Accordingly, individuals sentenced to the ADTC are subject to the control of the Commissioner who, pursuant to *N.J.S.A.* 2C:47–4b, has the express discretionary power to transfer them "out" of the facility.

■ This provision of Chapter 47 of the Code has, as its source, *N.J.S.A.* 2A:164–7 of the "Sex Offender Act" which was repealed by *L.* 1978, *c.* 95, § 2C:98–2, effective September 1, 1979. The source statute, in pertinent part, provided:

> The commissioner, in his discretion, is hereby authorized and empowered to arrange for the transfer of such person *to or from any institution within the jurisdiction of the department* for the purpose of providing for the needs and requirements of such person according to the individual circumstances of the case. [*N.J.S.A.* 2A:164–7 (repealed by *L.*1978, *c.* 95, § 2C:98–2, effective September 1, 1979) (Emphasis supplied)].

Therefore, in considering the discretionary power to transfer set forth in *N.J.S.A.* 2C:47–4b, it is not unreasonable to conclude that, in an emergency situation, where overcrowding precludes the admission of additional sex offenders to the ADTC, the Commissioner would have the authority to house

individuals sentenced to the ADTC in county jails, pending the availability of space at the former facility. *Cf. Worthington v. Fauver*, 88 *N.J.* 183 (1982).

This conclusion is supported by a series of statutory enactments which generally define the power of the Commissioner to designate the place and scope of confinement of those sentenced for crimes committed in this State and to arrange for the transfer of such individuals. For example, "[a]ny inmate of any correctional institution as classified in section 30:1–7 of th[e] Title [1] may be transferred to any charitable, hospital or other similar institution. . . ." *N.J.S.A.* 30:4–84. [Footnote supplied]. Furthermore, "[a]ny inmate of any correctional institution as classified in section 30:1–7 of th[e] Title may be transferred to any other such correctional institution by order of the commissioner directing such transfer, either upon the application of the chief executive officer or upon the initiative of the commissioner." *N.J.S.A.* 30:4–85. *See also N.J.S.A.* 30:4–85.1 (any inmate of a State correctional institution may be transferred to a county correctional facility, on the initiative of the commissioner, with the consent of the board of chosen freeholders).

In addition, the Legislature has further provided that:

When a person has been convicted of an offense against the State of New Jersey and has been committed for a term of imprisonment by a court to an institution defined in *R.S.* 30:1–7, and *when it appears to the satisfaction of the Commissioner of Institutions and Agencies that the inmate should be transferred to an institution or facility more appropriate for his needs and welfare or that of the other inmates or for the security of the institution*, the Commissioner shall be authorized and empowered to designate the place of

---

[1] *N.J.S.A.* 30:1–7 lists the Diagnostic Center at Menlo Park, as well as any other correctional institution of the State which may be "established hereafter for any similar purpose . . . ." Although the ADTC in Avenel is not specifically listed as either a relief or training institution or as a correctional institution under *N.J.S.A.* 30:1–7, it must be noted that this institution replaced the Diagnostic Center when the Menlo Park facility was closed. However, the ADTC in Avenel is listed as a State correctional institution, under the control of the Department of Corrections, in *N.J.S.A.* 30:1B–8.

confinement to which the inmate shall be transferred to serve his sentence.[2] [*N.J.S.A.* 30:4–91.1 (Emphasis and footnote supplied)].

These provisions clearly do not refer only to transfer of State prison inmates.

*The commissioner* or his duly authorized agent, *may designate as a place of confinement any available, suitable, and appropriate institution or facility* whether owned by the State or otherwise, *and may at any time transfer a person from one place of confinement to another.*

The word "facility" shall include private nonprofit community-based residential treatment centers which provide for the care, custody, subsistence, education, training and welfare of inmates. [*N.J.S.A.* 30:4–91.2 (Emphasis supplied)].

Despite this broad statutory authority conferred upon the Commissioner, defendant cites to selected language from *State v. Chapman,* 95 *N.J.* 582, 593 (1984), indicating that "a trial court has the option to sentence the defendant either to Avenel or to the custody of the Commissioner." Relying on this authority, defendant argues that "[u]nlike other sections of our Criminal Code, a defendant sentenced to Avenel is *not* placed in the custody of the Commissioner." [Emphasis in original]. Clearly this is not correct, as *N.J.S.A.* 30:1B–8 specifically provides that the "Adult Diagnostic and Treatment Center, Avenel" is a correctional institution "assigned to and maintained and operated by the Department of Corrections." Moreover, as *N.J.S.A.* 2C:47–4 makes clear, defendant is under the jurisdiction of the Commissioner as a result of his sentence to the ADTC.

In enacting the "Department of Corrections Act of 1976," *N.J.S.A.* 30:1B–1 *et seq.,* the Legislature specifically found and declared that:

the purpose of the department shall be to protect the public and *to provide for the custody, care, discipline, training and treatment of persons committed to State correctional institutions* or on parole; *to supervise and assist in the treatment and training of persons in local correctional and detention*

[2]The jurisdiction of both the Commissioner of Institutions and Agencies and the Department of Institutions and Agencies in this area has been transferred to the Department of Corrections. *N.J.S.A.* 30:1B–10.

*facilities*, so that such persons may be prepared for release and reintegration into the community. . . . [*N.J.S.A.* 30:1B-3 (Emphasis supplied) ].

In conjunction with these purposes, the Commissioner is given broad power to: (1) "[d]etermine all matters of policy and regulate the administration of the institutions or noninstitutional agencies within his jurisdiction," *N.J.S.A.* 30:1B-6g; (2) "[p]romote the development of alternatives to conventional incarceration for offenders who can be dealt with more effectively in less restrictive, community-based facilities," *N.J.S.A.* 30:1B-6m; and (3) "[p]erform such other functions as may be prescribed in this act or by any other law." *N.J.S.A.* 30:1B-6q. Certainly, when these powers are considered in the aggregate, they would allow the Commissioner to transfer or maintain ADTC-sentenced inmates to county correctional facilities pending the availability of space at Avenel, in this emergency situation.

■ Here, the Commissioner has exercised such power and has administratively determined that defendant cannot be presently accommodated at the ADTC. The underlying reason for this decision stems from the spatial limitations extant at the Avenel facility. As pointed out above, the ADTC is, at the moment, completely filled, with a total operational capacity of 362 inmates. Consequently, additional inmates cannot, for now, be accepted there. Both the Department of Corrections and the staff at the ADTC are aware of the problems posed by spatial limitations at that facility and are making a good faith effort to resolve the problems.

In the interim, it does not appear possible to accommodate defendant's desire to be transferred immediately to the ADTC. Accordingly, the Commissioner did not improperly exercise the broad authority delegated to him in determining that defendant must await admission to the ADTC pending the availability of space at the facility. We emphasize that we do not address the question of retention of ADTC inmates at county jails or their transfer to other facilities in circumstances which differ from those here involved. The trial court's order compelling defend-

ant's immediate admission to the ADTC clearly impedes the ability of the Commissioner to exercise the power to designate the place of confinement of State Prison inmates which has been delegated to him by our Legislature.

Furthermore, the trial court's order forces defendant's admission to the ADTC during a period when that facility is filled to capacity, thus raising the issue of overcrowding. This situation may be equated with that which existed on June 19, 1981, when then Governor Brendan Byrne signed *Executive Order No. 106.* In that Order it was recognized that "State Prisons and other penal and correctional institutions of the New Jersey Department of Corrections" were housing inmates in excess of their capacities, resulting in serious overcrowding in State institutions. Accordingly, the Governor declared that "a state of emergency exist[ed] in the various State and County penal and correctional facilities" and directed:

that the authority to designate the place of confinement of all inmates confined in all State and/or County penal or correctional institutions shall be exercised for the duration of this Order by

\*       \*       \*       \*       \*       \*       \*       \*

the Commissioner of the Department of Corrections to effectuate the provisions of th[e] Order.

*The Commissioner may designate as a place of confinement any available, suitable, and appropriate institution or facility, whether owned by the State, a County, or any political subdivision of this State, or any other person, for the confinement of inmates confined in the State and/or County penal or correctional institutions.* [Emphasis supplied].

*Executive Order No. 106* has since been extended by *Executive Order No. 108* of September 11, 1981, *Executive Order No. 1* of January 20, 1982, *Executive Order No. 8* of May 20, 1982, *Executive Order No. 27* of January 10, 1983, *Executive Order No. 43* of July 15, 1983, *Executive Order No. 60* of January 20, 1984, *Executive Order No. 78* of July 20, 1984, *Executive Order No. 89* of January 18, 1985 and *Executive Order No. 127* of January 17, 1986. Each of these orders has declared a continuing state of emergency in "the State prisons and other penal and correctional institutions of the New Jersey Depart-

ment of Corrections." The current *Executive Order No. 127* will be in effect until January 20, 1987.

The New Jersey Supreme Court has held that Governor Byrne's original *Executive Order No. 106,* as well as subsequent *Executive Order No. 108,* were authorized by the Disaster Control Act, *N.J.S.A.* App. A:9–30 *et seq.* and did not violate the constitutional principle of separation of powers. *Worthington v. Fauver, supra,* 88 *N.J.* at 188. Although, in writing for the *Worthington* Court, Justice Pashman referred generally to overcrowding in State prisons, the express language of the original *Executive Order No. 106* was not this limited. Rather, both Governor Byrne and later Governor Kean have consistently referred to overcrowded conditions both in "State Prisons and *other penal and correctional institutions of the New Jersey Department of Corrections."* [Emphasis supplied]. Since it is clear that the Legislature intended that the ADTC be considered as one of the "correctional institutions of this State," see *N.J.S.A.* 30:1B–8, the power conferred on the Commissioner by virtue of *Executive Order No. 106* and its progeny, should also extend to the housing of defendant herein at the Morris County Jail.

In light of the foregoing authority, we conclude that the Commissioner may house ADTC-sentenced inmates in county jails pending the availability of space in the facility at Avenel. The trial court's order compelling defendant's immediate admission to the ADTC both exceeds the scope of the sentencing court's authority and impedes the Commissioner's ability to exercise his statutory power.

Entirely apart from the fact that the trial court did not have the power to enter an order directing defendant's immediate transfer to Avenel, his admission to the facility, out of sequence from his position on the "waiting list," would be grossly unfair to the other inmates on the list. Defendant has been on the "waiting list" since December 1985. Many of the other sex offenders on the list have been awaiting transfer to the ADTC

since May and June 1985. Whatever defendant's entitlement to treatment for his sexual problem may be, he has no greater entitlement to treatment than any other sex offender currently named on the ADTC waiting list. Thus, defendant's admission, out of sequence from his "waiting list" position, would be highly inequitable, especially with respect to those sex offenders who have been waiting far longer than he for admission to the same facility.

In ordering defendant's admission to the ADTC, the trial court emphasized its belief that respondent was entitled to priority consideration because he had made application for transfer to the court, thus demonstrating his desire for treatment. This approach to the accommodation of sex offenders at the ADTC is arbitrary and capricious. The ADTC cannot, under any circumstances, arbitrarily determine that an inmate on the waiting list does not want, or will not be responsive to, treatment merely because that particular inmate does not possess the wherewithal or resources to apply to the courts for admission to the facility. A determination as to any sex offender's desire for or responsiveness to treatment can only be made after the ADTC's therapeutic staff has had the opportunity to work with the inmate. We, therefore, expressly reject the trial court's suggestion that one of the criterion for admission to the ADTC should be the making of a legal application. Such a ruling is without support in law and it is clearly arbitrary.

Finally, while defendant might obtain an earlier release from prison if transferred there immediately and released on parole at presumptive eligibility, his counsel expressly stated at oral argument that defendant did not wish to be resentenced or transferred into the general State Prison population. *See N.J. S.A.* 2C:47–3a; *N.J.S.A.* 2C:47–4b; *State v. Chapman, supra,* 95 *N.J.* at 588–593; *State v. Hamm,* 207 *N.J.Super.* 40, 43 (App.Div.1986). Even if defendant were to be transferred immediately to the ADTC and promptly began receiving treat-

ment for his problems, there is no guarantee that he, in fact, would be successful in obtaining an early release on parole.

Accordingly, the order compelling defendant's transfer to the ADTC is reversed.